Argued and submitted March 13, affirmed July 2, 2008

## McGEE PLUMBING, INC.,
*Petitioner,*

*v.*

## BUILDING CODES DIVISION,
a division of the
Department of Consumer and Business Services,
and Plumbing Board,
*Respondents.*

Department of Consumer and Business Services
20050074; A131842

188 P3d 420

Ben Shafton argued the cause and filed the briefs for petitioner.

Richard D. Wasserman, Attorney-in-Charge, Civil/Administrative Appeals, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Petitioner McGee Plumbing Company seeks review of an order of the Department of Consumer and Business Services (DCBS) and the Plumbing Board (board) that revoked its plumbing business certificate based on a pattern of violations of the laws relating to the licensing of journeyman plumbers. The assignments of error relate to procedural issues concerning the agencies' modification of the proposed order of the administrative law judge (ALJ) and whether the agencies' order imposing revocation, rather than suspension, of the certificate is based on substantial reason. We affirm.

Petitioner has held an Oregon plumbing business certificate of registration since 1992. The certificate is a necessary prerequisite to operating a plumbing business in Oregon. The board is an advisory board within the Building Codes Division of DCBS, and is responsible for the licensing of plumbers. *See generally* ORS ch 693; ORS 455.010. DCBS has "concurrent jurisdiction" with the board, ORS 455.153, and is authorized to administer the statutes and rules for licensing of plumbers and standards of plumbing to the same extent as the board. ORS 455.129(3).

Only a journeyman plumber with a journeyman plumber's license may engage in the business of journeyman plumbing. ORS 693.030 provides, in part:

"(1) A person may not engage in the trade or business of journeyman plumber without a journeyman plumber license issued under this chapter.

"(2) A licensed plumbing contractor or a person required under ORS 442.010 to 447.156 to be licensed as a plumbing contractor may not:

"(a) Permit or suffer any person to work as a journeyman plumber who does not hold a valid journeyman plumber license."

The board is authorized to impose civil penalties for violations of ORS chapter 693. ORS 693.992.

The board and DCBS have authority under ORS 447.050 and ORS 455.125 to revoke or suspend a plumbing

business certificate of registration. Under *former* ORS 447.050(1), the board

> "may revoke or suspend any certificate of registration * * * if the holder of the certificate has failed to comply with ORS 447.010 to 447.156 and 447.992 or the rules adopted thereunder or with ORS chapter 455 or the rules adopted thereunder or with ORS chapter 693."

DCBS adopted *former* OAR 918-695-0010(9),[1] implementing ORS 447.050(1), which provided, in part:

> "A license may be revoked, canceled or suspended when:
>
> "(a) A 'pattern of conduct' is determined and exists if a plumbing licensee is assessed civil penalties under the plumbing statutes or rules on at least three separate occasions within a three-year period[.]"

DCBS may revoke a certificate under ORS 455.125, which provides, in part:

> "(1) In addition to any other sanction, remedy or penalty provided by law, [DCBS] or an appropriate advisory board may deny, suspend, condition or revoke a registration, certification, license or other authority to perform work or conduct business issued under the laws administered by [DCBS] or [the board] if the holder:
>
> "(a) Fails to comply with a provision of * * * ORS chapter 447, 460 or 693, or with any rule adopted under those statutes * * *."

Between 2003 and 2005, the board penalized petitioner on three different occasions for allowing journeyman plumbing work to be performed by persons who were not licensed journeyman plumbers, in violation of ORS 693.030(2)(a): (1) in a consent order of June 6, 2003, the board assessed a $1,000 penalty as a result of petitioner having allowed Provenzano, who did not have a valid journeyman plumber's license, to install potable water piping, a drain, and waste and vent system, in violation of ORS 693.030(2)(a); (2) in a default order issued April 20, 2004, the board

---

[1] ORS 447.050 was repealed in 2005, Or Laws 2005, ch 758, § 56, effective 2006. *Former* OAR 918-695-0010 was repealed effective October 1, 2006. Throughout this opinion, we refer to the statutes and administrative rule that were in effect at the pertinent time.

assessed a $4,000 penalty after finding that petitioner had allowed Peters and Simms, who were unlicensed persons, to connect a toilet tank, in violation of ORS 693.030(2)(a); and (3) on February 24, 2005, the board found that petitioner had violated ORS 693.030(2)(a) by permitting Cates to perform plumbing repair to a water heater without an Oregon plumbing journeyman's license and imposed a penalty of $5,000. Each of those determinations was uncontested and has become final. On February 18, 2005, the board and DCBS commenced proceedings to revoke petitioner's business certificate of registration, based on a "pattern of conduct." OAR 918-695-0010(9).

Petitioner requested and obtained a hearing before an ALJ. In determining whether revocation of petitioner's certificate was an appropriate sanction, the ALJ considered mitigation testimony of petitioner's president, McGee. Explaining the context of the three prior violations, McGee admitted that journeyman plumbing work was done in each instance by unlicensed employees of petitioner. As to the June 6, 2003, consent order, McGee testified that both he and Provenzano believed that Provenzano was licensed under a reciprocal licensing agreement between Oregon and Washington and were not aware that Oregon had terminated its reciprocal licensing. As to the April 20, 2004, default order, McGee stated that he dispatched Peters and Simms to assist a journeyman plumber on the installation of a residential toilet and that they were instructed not to begin work until the journeyman plumber had arrived. Peters and Simms disregarded McGee's instructions and began work on the job without a licensed journeyman present. With respect to the background of the February, 24, 2005, default order, McGee noted that, while Cates was performing a nonplumbing function, a water heater began to leak and Cates undertook emergency repairs without calling a journeyman plumber for supervision.

The ALJ noted that the relevant administrative rule and statutes grant the board and DCBS discretion in determining the sanction to be imposed. The ALJ reasoned that petitioner's evidence showed that the prior violations were not serious, involved inadvertence rather than intentional misconduct, and did not impose a risk of danger to public

health and safety. For those reasons, the ALJ recommended a sanction of suspension, rather than revocation. The ALJ explained:

"I am persuaded that the public would be better served by [petitioner's] presence in a competitive market after a short period of suspension and with conditions on the certificate that will assist [petitioner's] future compliance."

(Footnote omitted.)

The board and DCBS overturned the ALJ's order. In an amended proposed order, the board and DCBS initially excluded petitioner's evidence concerning the circumstances of the prior violations. However, the final order states that McGee's testimony was considered but was given little weight. With regard to the background of the June 6, 2003, consent order, the board's order discounted McGee's testimony because McGee did not have first-hand knowledge of Provenzano's intentions at the time of the violation. Further, the order stated that there was no evidence that petitioner had sought to verify Provenzano's Oregon journeyman license before assigning him to work in Oregon. As to the April 20, 2003, violation, the board found that McGee's testimony that Peters and Simms were waiting for a journeyman plumber did not mitigate the violation, because, in order to assist a journeyman, a nonjourneyman must be enrolled in an apprentice training program, and petitioner had offered no evidence that Peters and Simms were so enrolled. The board applied similar reasoning to its analysis of McGee's testimony with regard to the February 24, 2005, violation. Finally, citing a prior final order involving revocation of a plumbing business certificate on similar facts, the board explained that the three prior violations supported the revocation of petitioner's license under both ORS 447.050 and ORS 455.125. The board reasoned:

"We find it appropriate to revoke [petitioner's] certificate of registration for several reasons. [Petitioner] allowed four unlicensed individuals to perform plumbing work. As four different employees were involved in the violations, we conclude that [petitioner's] violations are not isolated, inadvertent events. Rather, they indicate [petitioner's] employment practices are insufficient to prevent licensing

violations from recurring in Oregon. In addition, the violations are of a serious nature; plumbing installations by unlicensed individuals may place the public health at risk."

(Footnote omitted.)

 Petitioner seeks review, asserting six assignments of error. In its first assignment, petitioner contends that the ALJ's proposed suspension order became final under ORS 183.464(1) after 30 days and that the agencies lost authority to issue further orders after that time. ORS 183.464 provides, in part:

"(1) Except as otherwise provided in subsections (1) to (4) of this section, unless a hearing officer is authorized or required by law or agency rule to issue a final order, the hearing officer shall prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law. *The proposed order shall become final after the 30th day following the date of service of the proposed order, unless the agency within that period issues an amended order.*

"* * * * *

"(5) The Governor may exempt any agency or any class of contested case hearings before an agency from the requirements in whole or part of subsections (1) to (4) of this section by executive order. The executive order shall contain a statement of the reasons for the exemption."

(Emphasis added.)

In 1980, Governor Atiyeh issued Executive Order 80-9, exempting from ORS 183.464(1) all state agencies except those expressly mentioned. The order provides, in part:

"1. The Motor Vehicles Division of the Department of Transportation shall comply with ORS chapter 183.464 in contested cases arising under [particular statutes]. This agency shall submit to the Governor not later than July 1, 1980, its proposed rules which shall specify the prescribed procedures and time tables for appeals under this provision.

"2. Pursuant to ORS 183.464(5), I hereby exempt all other state agencies from the provisions of ORS 183.464. * * *

"3. My reason for granting this exemption is that the ultimate decision-making responsibility for adjudicating contested cases should be with the department heads or governing boards as prescribed by statute. The hearings officer's role should be limited to conducting the hearing and making recommendations to the agency head. Hearings officers should not as a general rule be given any final, decision-making authority. The citizens of Oregon expect department heads and agency governing boards to accept the responsibility for decisions with which they have been charged. I have surveyed the agencies of state government, and they concur that this should be their responsibility. The only exception is that mentioned in section 1 of this Executive Order, which pertains to an agency having a high volume of hearings in which the determination is largely factual and based upon previously established policy."

Petitioner claims that the executive order does not apply to state agencies created after its issuance, including the Plumbing Board and DCBS. We disagree. The executive order shows a clear intention to exempt all agencies other than the Motor Vehicles Division from the requirements of ORS 183.464. The names and duties of state agencies shift in the course of time. Here, for example, the functions of the board and DCBS were performed in 1980 by the Builders Board and the Department of Commerce. The executive order on its face applies to "all * * * state agencies," without qualification. We interpret the order to apply to all state agencies without regard to the timing of their authorization or statutory charge. We thus conclude that the board and DCBS are exempt from ORS 183.464 and reject petitioner's first assignment of error.

■ Petitioner's fourth assignment of error complains about the administrative notice taken by the board of a prior revocation decision. In their amended proposed order, the agencies found:

"The Department and the Board take judicial notice that on June 17, 2005, the Board and the Department issued a Final Order revoking the Certificate of

Registration of a licensee in agency case No. 2004-0461, In the Matter of Four Star Development Inc. Civil penalties had been assessed against the licensee on three occasions within three years. The Certificate of Registration was revoked under ORS 447.050 and ORS 455.125(1)."

On the basis of that finding, the agencies concluded:

"Revocation of respondent's license is also consistent with the action taken by the Board and the Director in similar circumstances. This case is similar to agency case 2004-0461, Four Star Development Inc. The Board and the Director revoked Four Star's certificate of registration after three violations."

Petitioner objected to the finding being made after the evidentiary hearing as a denial of due process. The agencies reiterated the finding and conclusion in their final order. On review, petitioner asserts that the finding is not relevant and that taking official notice of the prior decision violated its due process rights under the Fourteenth Amendment to the United States Constitution.

The administrative notice complies with ORS 183.450(3), and petitioner has not shown how the application of that statute is inconsistent with the Due Process Clause. ORS 183.450(4) provides, in part:

"The hearing officer and agency may take notice of judicially cognizable facts, and may take official notice of general, technical or scientific facts within the specialized knowledge of the hearing officer or agency. Parties shall be notified at any time during the proceeding but in any event prior to the final decision of material officially noticed and they shall be afforded an opportunity to contest the facts so noticed."

The unpublished agency decision is a "judicially cognizable fact." Under OEC 202(2), judicially noticed law includes "[p]ublic and private official acts of the legislative, executive and judicial departments of this state * * *." An agency decision is an official act within the scope of this evidentiary rule. To the extent that the agencies relied on the facts in the Four Star Development matter, petitioner was provided an opportunity to contest any facts determined by the agencies. The agencies adopted the Attorney General's

Model Rules of Procedure for use in contested cases. OAR 918-690-0330. One of those rules, OAR 137-003-0615, regulates official notice and implements ORS 183.341(4). OAR 137-003-0615(4)(b) allows a party the opportunity to "present written or non-written rebuttal evidence" after agency notice of official notice.[2] Petitioner does not explain why the statute and rule fail to afford it due process. We reject petitioner's fourth assignment of error.

Petitioner contends in its fifth assignment that, in light of the discretionary nature of the decision under ORS 447.050 and ORS 455.125, the agencies must clearly explain their rationale for imposing revocation, as opposed to suspension, as a sanction. Petitioner is correct that the agencies must rationally explain their decision, *Papas v. OLCC*, 213 Or App 369, 375-76, 161 P3d 948 (2007), and we conclude that they have met that standard here.

We reject petitioner's remaining assignments of error without discussion.

Affirmed.

---

[2] OAR 137-003-0615(4) provides:

"After the issuance of a proposed order, the agency may take notice of judicially cognizable facts and may take official notice of general, technical or scientific facts within the specialized knowledge of the agency as follows:

"(a) The agency shall provide notice of judicially cognizable facts or official notice of general, technical or scientific facts in writing to the parties to the hearing and, if authorized to issue a final order, to the administrative law judge.

"(b) A party may object in writing to agency notice of judicially cognizable facts or official notice of general, technical or scientific facts with service on any other parties, the agency and, if authorized to issue a final order, on the administrative law judge in the manner required by OAR 137-003-0520. A party may request that the agency or, if authorized to issue a final order, the administrative law judge provide an opportunity for the party to present written or non-written rebuttal evidence.

"(c) The agency may request the administrative law judge to conduct further hearing proceedings under OAR 137-003-0655 as necessary to permit a party to present rebuttal evidence.

"(d) If a party presents rebuttal evidence, the agency or, if authorized to issue a final order, the administrative law judge shall rule in the final order on whether the noticed facts were considered as evidence."